UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL ENGALA,

        Plaintiff,

v.                                     Case No.  8:08-cv-1436-T-24 TGW

HARBOUR WOOD NURSING CENTER,
INC. a dissolved Florida for-profit
corporation, and PRIME HEALTH
SERVICES GROUP HEALTH PLAN,

        Defendants.
_____/

## ORDER

      This cause comes before the Court on Plaintiff's Motion for Attorneys' Fees and Costs.
(Doc. No. 26).  A review of the procedural history of this case is necessary in order to properly
evaluate this motion.

## I.  Background

      Plaintiff filed a three page complaint in this case on July 25, 2008, in which she asserted
two claims–a claim for civil theft against her employer (regarding its alleged failure to pay the
contributions it deducted from her paycheck into the ERISA Plan) and a claim for benefits under
ERISA against the ERISA Plan.  (Doc. No. 1).  Thereafter, Plaintiff failed to file proper returns
of service, and the Court struck them.  (Doc. No. 4, 5, 6).  Plaintiff re-filed proper returns of
service, stating that Defendants were served on August 14, 2008.  (Doc. No. 7, 8).  However,
more than three months after Defendants were served, they still had not made an appearance in
the case.  As such, the Court issued an order to show cause regarding Plaintiff's failure to move
for entry of default.  (Doc. No. 9).

The Clerk entered default against Defendants on December 3, 2008. (Doc. No. 11). More than a month later, Plaintiff had failed to move for entry of default judgment, and the Court issued an order to show cause regarding that failure. (Doc. No. 13).

Thereafter, on January 7, 2009, Plaintiff filed her first motion for entry of default judgment. (Doc. No. 15). In that motion, Plaintiff attempted to recover on both of her claims (civil theft and ERISA), and she attempted to recover damages for her civil theft claim (which was asserted against her employer only) from the ERISA Plan. That motion was so problematic, the Court held a twenty minute hearing in order to explain to Plaintiff why the motion was deficient and how to cure the defects. (Doc. No. 17). The Court then denied the motion for default judgment without prejudice, directing Plaintiff to file an amended motion consistent with the matters discussed at the hearing. (Doc. No. 18).

On February 4, 2009, Plaintiff filed her second motion for default judgment, in which she sought default judgment against her employer on the civil theft claim. (Doc. No. 19). This second motion for default judgment was equally as problematic as the first, and the Court denied the second motion for default judgment. (Doc. No. 20). The Court granted Plaintiff leave to file one final motion for default judgment, which was required to be filed by February 13, 2009.

On February 18, 2009, the Court closed this case due to Plaintiff's failure to comply with the Court's order to file a motion for default judgment by February 13, 2009. (Doc. No. 21). Thereafter, Plaintiff filed a motion to vacate the Court's order and extend the time for filing the default judgment, and she filed her third motion for default judgment. (Doc. No. 22, 23).

In her third motion for default judgment, Plaintiff sought default judgment against the ERISA Plan for unpaid benefits and reimbursement of premiums she paid into the Plan. (Doc.

No. 23). The Court pointed out that she could not be awarded both benefits under the Plan and the premiums contributed to the Plan that entitled her to such benefits. As such, the Court granted the third motion for default judgment in part. (Doc. No. 25). However, the Court noted that Plaintiff requested attorneys' fees and costs in that motion, but she failed to submit any documentation to support such claims. As a result, the Court gave Plaintiff one final opportunity to submit evidence in support of her claims for attorneys' fees and costs.

Thereafter, Plaintiff filed the instant motion for attorneys' fees and costs. Like most of the other filings in this case, this motion is problematic.

## II. Motion for Fees and Costs

In her motion for attorneys' fees and costs, Plaintiff seeks $12,915 in attorneys' fees and $1,234.86 in costs. Clearly, the amounts requested are unreasonable given the problematic history of this case and that this was a case that resulted in default judgment.

In determining whether to award attorneys' fees under ERISA, the Court considers the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

Ironworkers Local No. 272 v. Bowen, 695 F.2d 531, 534 (11th Cir. 1983)(citation omitted). Upon consideration of these factors, the Court finds that an award of attorneys' fees is appropriate.

The Court must now determine the amount of attorneys' fees that should be awarded. In order to do so, the Court applies the "'lodestar approach' and calculate[s] the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community." <u>Cromer-Tyler v. Teitel</u>, 2007 WL 2684878, at *2 (M.D. Ala. Sept. 11, 2007)(citations omitted).

Therefore, the Court must first determine whether the hourly rates charged by the attorneys' in this case was reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." <u>Norman v. Housing Authority of the City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988)(internal and external citations omitted). However, a court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." <u>Id.</u> at 1303 (citations omitted).

Three attorneys worked on Plaintiff's case. Paul Kimsey, who has over fifteen years of litigation experience, billed his work at a rate of $375 per hour. The Court, based on its experience, finds that this rate is excessive and that the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation is $300.

Edward Doskey, who has twelve years of litigation experience, billed his work at a rate of $325 per hour. The Court, based on its experience, finds that this rate is excessive and that the prevailing market rate in the relevant legal community for similar services by lawyers of

reasonably comparable skills, experience, and reputation is $275.

David Perrott, who has been a member of the Florida Bar for almost five years, billed his work at a rate of $225 per hour. The Court, based on its experience, finds that this rate is excessive and that the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation is $200.

Next, the Court must determine the amount of hours reasonably expended. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. <u>See</u> <u>id.</u> at 1301 (citation omitted). Thus, fee applicants must exercise "billing judgment." <u>See</u> <u>id.</u> (citation omitted). This means "that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" <u>Id.</u> (citation omitted)(emphasis in original). Furthermore, "in determining reasonable hours the district court must deduct time spent on discrete and unsuccessful claims." <u>Id.</u> at 1302 (citation omitted).

Paul Kimsey billed 16.3 hours in this case. However, a portion of this time was unnecessary. The Court finds that the hours spent responding to Court orders due to his failure to properly litigate this case should not be compensable. As such, the Court finds that the following 3.8 hours are not compensable:

- 11/25/08: receipt and review of Order to Show Cause - .1 hour

- 12/3/08: preparation of Plaintiff's response to Order to Show Cause - .2 hours

- 1/5/09: receipt and review of Order to Show Cause - .1 hour

- 1/7/09: preparation of Plaintiff's response to Order to Show Cause - .2 hours

- 1/8/09: receipt and review of Notice of Hearing (the hearing was held to explain to Plaintiff all of the problems with her motion for default judgment) - .1 hour

- 1/22/09: prep and attend the hearing - 3 hours

- 1/22/09: receipt and review of order denying default judgment - .1 hour

Additionally, the Court notes that Plaintiff spent a good portion of this case pursuing a civil theft claim; her first two motions for default judgment were based on that theory. Since she was unsuccessful on that claim, time spent on that claim must be deducted. However, Kimsey failed to include sufficient detail in his billing records in order for the Court to ascertain exactly how much time was spent on the ERISA claim and how much time was spent on the civil theft claim. Accordingly, the Court finds that the following 3.5 hours are not compensable:

- 1/7/09: preparing first motion for default judgment (which was based in part on the civil theft claim) - .5 hours (reducing the 1 hour expended by half, given that there is no clear delineation regarding the amount of time spent on each claim)

- 1/22/09: participating in conference with the client regarding the denial of the first default judgment motion and drafting Plaintiff's affidavit in support of the second motion for default judgment - 1 hour (reducing the 3 hours expended by one hour, which the Court allocates as time spent on the civil theft claim)

- 1/29/09: finalize second motion for default judgment (based on the civil theft claim): - 2 hours

Therefore, after deducting 3.8 hours as unnecessary and allocating 3.5 hours to the unsuccessful civil theft claim, the Court finds that 9 hours expended by Kimsey are

compensable.  Furthermore, given that the Court has found that a reasonable hourly rate for him is $300, the Court awards Plaintiff $2,700 for attorneys' fees relating to Kimsey's work.

Doskey billed 23.1 hours in this case.  However, like Kimsey, Doskey failed to include sufficient detail in his billing records in order for the Court to ascertain exactly how much time was spent on the ERISA claim and how much time was spent on the civil theft claim. Accordingly, the Court finds that the following 3.5 hours are not compensable:

- 2/20/08: legal research and preparation of demand letters to board of directors pursuant to Florida Statute § 772.11 (relating to the civil theft claim) - 1.5

- 7/2/08: research civil theft statute, initial draft of complaint, summons, and civil cover sheet - 2 (since there is no clear delineation regarding how the time was spent, the Court reduces the 3.2 hours billed by 2 hours, which the Court attributes to the civil theft research and time spent drafting the civil theft portion of the complaint)

Therefore, after deducting 3.5 hours that the Court allocated to the unsuccessful civil theft claim, the Court finds that 19.6 hours expended by Doskey are compensable.  Furthermore, given that the Court has found that a reasonable hourly rate for him is $275, the Court awards Plaintiff $5,390 for attorneys' fees relating to Doskey's work.

Finally, the Court finds that the 1.2 hours billed by Perrott are reasonable.  Furthermore, given that the Court has found that a reasonable hourly rate for him is $200, the Court awards Plaintiff $240 for attorneys' fees relating to Perrott's work.

Accordingly, as explained above, the Court calculates the award of attorneys' fees as follows:

- Kimsey: 9 hours x $300/hour = $2,700

- Doskey: 19.6 hours x $275/hour = $5,390

- Perrott: 1.2 hours x $200/hour = $240

Therefore, the Court awards Plaintiff $8,330 in attorneys' fees.

Plaintiff also seeks an award of $1,234.86 in costs. Upon review of the costs, the Court finds that they are reasonable and will be awarded to Plaintiff.

## III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 26) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court awards Plaintiff $8,330 in attorneys' fees and $1,234.86 in costs against Defendant Prime Health Services Group Health Plan; otherwise, the motion is **DENIED**. The Clerk is directed to **CLOSE** this case.

DONE AND ORDERED at Tampa, Florida, this 10th day of March, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

8